Okay, good morning. We're going to hear our argument in the second case today, Appeal 20-1977, Fidelity Information Services v. Groove Digital. We'll first hear our argument from Appellant Fidelity. Mr. Jakes, whenever you're ready. Good morning, and may it please the Court. The issue in our appeal is whether it would be obvious to store a second set of information in a second database for comparison. The Board here found that all the other claim limitations, that's in Claims 1-13 and 36, all the limitations were taught or suggested in the prior art, including the second information. Now, this second information is described in the patent as segmentation specifics that identify the advertiser's target audience. This same information is disclosed in Wilson, which is the primary reference, as a criteria statement. So, the only thing the Board found missing was storing the second information in a second database. Now, Wilson, the primary reference, it discloses multiple databases. There's no dispute that databases and their advantages were well would want to store this information in a database. For example, if you want to recall the information later to update the campaign data in Wilson, the criteria statements, they would have to be stored somewhere. That's basically what our experts said. Yeah. Can we focus on what your specific theory of obviousness was for storing these criteria database, CR Module 40, right? Exactly right. And that was the example that if you wanted to update the campaign database, you'd have... Was there a different theory other than the theory that it would be useful to have this criteria statement data on hand to update the campaign database? Or was this the theory? As I look at the declaration, it seems like this is what Dr. Rosenberg's theme was. I would agree with you, Your Honor. That was his reason, and it's expressed in his declaration, and it's a good enough reason. We don't have to have multiple reasons. Storing information in a database, it's so common and routine. The 762 specification, it really doesn't describe any advantages to storing this information in a second database. Our expert did come up with a reason why someone would do that. Now, admittedly, Wilson is silent on whether the criteria statements are also stored, but that's where Dr. Rosenberg explained why someone would have found it obvious to store these statements in one of the multiple databases. I guess what I'm trying to understand is if Dr. Rosenberg had a theory for why you would want to have these criteria statements stored on hand, and the board responded that that theory seems to be problematic because all of the data that is needed to update the criteria statements, then what's wrong with the board's analysis there where your expert pitched a theory, the theory was rejected? I guess the question is, if the board was right in its analysis of Dr. Rosenberg's theory, then isn't that the end of the matter? I don't think so, Your Honor, because there could be other reasons. Dr. Rosenberg gave one, and the board's rejection of that theory, they rejected it on other grounds. They said it was conclusory, and I don't think that was a fair criticism. It's maybe only four or five. To update that campaign database, it is a logical explanation that you would need the criteria that were used to generate it to do that. That's how it's generated. It's generated from those criteria statements, comparing it to the user input to generate that campaign database, and if you want to update it, you would need the inputs, and one of those inputs is the criteria statements. So I think the board was unfair in its criticism of that theory, and was really looking for what seemed to be an express disclosure of storing the second information in a database. Databases were well known. There's no discussion in the patent about it, and even the specification here is silent on the significance of storing it in the database. That suggests a person skilled in the art was more than capable of choosing between these known methods of storing information. The obviousness analysis here, it doesn't require adding structure. That seems to be Groove's main argument. Wilson already discloses a second database, which is the campaign database that's different than the audience demographics database, and he explains the logical place to store these query statements, which are the target criteria statements, would be with the results, and either way, there are multiple databases in Wilson, so there's no missing structure. We would ask the court to reverse the board's decision here that claims 1 through 13 and 36 are not unpatentable. The legal question of obviousness is one this court can decide, and the board here, we think, made a legal error in requiring too high a standard to prove obviousness. I'm going to probably save the rest of my time to respond to Groove's cross-appeal with the court's permission. Okay. Thank you, Mr. Jakes. I'm going to hear from the other side. Is it Mr. Bach? Hogue, Your Honor. Mr. Hogue. I'm sorry. Okay. That's fine. Just fine. Good morning. The limitation is not just a database. It says a second database coupled to the microprocessor and including a second set of information for that. Petitioner admits that, I mean, the appellant admits that Wilson does not show where the criteria statements are stored. Wilson is the only reference cited against this limitation. Wilson makes no mention of storing the criteria statement that are compared to the audience demographics, let alone storing that information in a database. Moreover, arguments from people that say that the missing element is obvious without a showing of the element in the prior art is impermissible hindsight reconstruction. The appellant is using the claims as their roadmap, and that's clear. Otherwise, show us where it is in the reference. I would like to- Could you help me understand the Wilson reference? We're all looking at this one particular figure of Wilson, and it talks about the target audience criteria statements being fed into the campaign selection module. I guess my question is, why wouldn't you have that information stored locally? When you receive that information, why wouldn't it be stored somewhere? Well, we just have no suggestion in Wilson whether or not it is stored anywhere or it's just real-time received streaming or whatever. That information just isn't there. There is a mention in Wilson, and the board mentioned it, of updating the campaign database based on reports of new demographics information, but that involves the campaign report module, which has no ability to receive the target audience criteria statements. We're just left adrift, and the only way you're going to find where we're going to start storing that in a second database, that's in the claim. That's not in Wilson. Wilson is admitted to be silent on this subject. Right. If it's not storing the data locally, if it's not catching the data and storing it somewhere, what do you think is going on in Wilson? It's just being streamed, real-time streamed straight into the selection module? That's what it looks like to me from Figure 2a. That's how I would interpret it. It's not stored at all. Judge Clevenger, how can it be updated if it wasn't stored someplace? How can the criteria statements be updated? Is that the question, Your Honor? Isn't that what you said? There's a mention of updating the campaign database? The campaign database is updated on reports of new demographics information, and that's what Wilson says, but that involves the campaign report module, which is below the campaign database or the campaign selection module. Right. Does updating the campaign database implicate the audience criteria statements? There's just no evidence that that occurs, Your Honor. I think we're doing some inventing here while we're looking at this. What's the purpose of the audience criteria statements? Yes. What do they have to do with the campaign? They have to create the target message. They're used in that way. They're just not coming from a database. Do you think there'd be something illogical about having a second database in this figure that would store the received target audience criteria statement? I do think it would be illogical, because that's not what Wilson says. Wilson is getting that. That doesn't quite tell me why it would be illogical, just because it's not there. I'm proposing a modification to the Wilson figure 2A. Is there something that would be illogical about modifying figure 2A to have a database that stores the received target audience criteria statement? Yes, that would be illogical, because there's no basis in the prior art for that modification, Your Honor. It's just an opinion at this point. Wilson is the only reference cited for this limitation. The other prior art can't help you with that. Mr. Hogue, are you going to talk about your cross appeal? I would like to do that, yes. It's fairly simple. The cross appeal is on the conception documents that antedate Tedetnik and Backus. We have the documents themselves are located in the appendix 4269 to 4280 in volume 2. The limitation is actually a part of a limitation that is really at issue here, which is independent or in conjunction with an internet browser window. The board looked at the local TOAST document, which is 4269 to 4272. They admitted that it showed the internet browser, but not the in conjunction with. They're saying that there's just no web browser in that document. We beg to differ, because the document itself shows that the TOAST of the micro browser has HTML hyperlinks in it. That's at the bottom of page 4269. It discusses hyperlinks in the middle of the next page, 4270. The TOAST is shown on 4271 as doing things like online dating and auctions. That is a web browser, Your Honor. We think that is clear error and that they weren't looking at the documents from the point of view of one of ordinary scholarly art. I understand that HTML refers to the notion of a web browser. I guess the question is, why does that reference to HTML necessarily mean that there was a conception of deploying an applet in conjunction with an internet browser window? Well, if you look at that document, HTML, and then you look at the next page, what is in the content of this thing is that it includes things like online dating and auctions. That is activity that happens online. That's seemingly one of ordinary scholarly art would understand. That is a web browser. I did want to say something about the diligence issue. There was a production schedule that was sworn to. It is in appendix 4324. That shows milestones in the production of the software that was an issue. It was sworn to. These dates were met and they were paid for. In our gray brief on page 17, we've annotated this gappy timeline shown by the appellant with the production schedule and all the relevant dates. There was reasonable diligence through at least the filing of the provisional application on March 18. What about the idle limitation, the applet becoming idle? There was a finding that there during the course of the UpNow project, there's any suggestion that the idle limitation was part of that work. I don't think that's really contested, Your Honor. I think that was shown in the conception documents. Well, I see my time is up. Okay. We'll save your rebuttal time. Thank you, Your Honor. Mr. Jake? Thank you, Your Honor. Let me address Groove's cross appeal first. The issue there, the only issue is whether substantial evidence supports the board's findings that Groove didn't prove prior invention before the two references. Groove failed in multiple ways here from conception to diligence to reduction to practice. Any of those findings is fatal to Groove's appeal. I believe that the substantial evidence standard should dictate the outcome here because the board didn't make any legal errors, didn't apply the wrong standard, and Groove is really just re-arguing the evidence that they presented to the board. I think the place to start and the easiest is corroboration of the conception. There wasn't corroboration. The rule of reason which the board applied, it doesn't excuse the corroboration requirement. Evidence of corroboration, it can't depend solely on the inventor. The board found here that Mr. Sun's testimony, it wasn't enough to corroborate the conception. And here we're talking about the dates, not the contents of the documents, but his recollection 15 years after the fact is vague on specifics. He doesn't say when or who received the document. Mr. Jake, what do you think about metadata? When is metadata enough to be corroborative? I mean, I understand that maybe you think there are some defects here with the metadata about references to last modified and a particular date, but if this isn't good enough, then what needed there to be for the metadata to be deemed reliable? Well, there wasn't enough here, and that's what the board found. There are circumstances where metadata has been relied on. Here, all we have really is the inventor's testimony supporting that. Metadata can be changed. It's not inviolable. And without something to corroborate the metadata, it's evidence that could be considered under the rule of reason, but it's not independent corroboration. And that's really the problem here is everything comes from the inventor. The law is pretty clear that that can't be enough, and the metadata on its own is not sufficient corroboration. Could be evidence in other circumstances. The board found here that those dates in the metadata and the dates that were added by the inventor were not good enough. And as I said, GRU failed throughout in proving its prior invention. It didn't rely on an actual reduction of practice. There's a problem with the constructive reduction to practice and the diligence as well. And throughout, there was a failure of proof at every stage because GRU didn't show that all claim elements were there for each of conception, diligence, and reduction to practice. So for conception, second database, independent of or in conjunction with were not there. Diligence, it was the second database or configured to become idle, the idle limitation. You can try to look at the HTML reference and read something into that, but the board didn't buy it. And this is a substantial evidence question. Mr. Jakes, what's your understanding of the in conjunction of limitation? The applet in conjunction with the web browser? What does that mean? Well, I know that it's not what's shown, which is you have to click on it. Okay, let's keep moving on. What is shown and what was disclosed is you have to click on the applet. So the applet was not So that's not in conjunction with. That's really what the question is here. And any of these can defeat GRU's claim for prior invention. There was also failure on the substance, on diligence, the SON declaration. It's just general statements that the work was conducted from October to January. There has to be more under the law. There has to be at least some specific dates. So just returning briefly to our opening appeal, GRU's argument seems to still come down to that Wilson makes no mention of storing information in a second database. We've acknowledged that. The question that I think Judge Chen, Your Honor, asked is why wouldn't you store that information locally? That's really our position. It wouldn't be illogical to do so. It's really a choice. The patent puts no significance on it. There are reasons to store the information locally and a database is the most logical place to do it. There are no further questions? I'll end there. Okay. Thank you. And I believe, Mr. Hoag, you have some rebuttal time devoted to your cross appeal. So go ahead. Right. Thank you, Your Honor. In terms of the date of conception, the board recognized that its argument or its not really caring for the August 13 date was weak on page 26. They continue on assuming that this is the metadata, blah, blah, blah. It's under the totality of the circumstances. They go on to their problems with conception. And I did want to say that we're talking about these claims that do not have the database limitation in them. And so there's no need to show the databases in the prior art. And so we did come down to being in conjunction with the point. And the appellant admits this limitation is obvious. We're antedating references, rule 131, that the patent office comes into effect. And they did that in appendix page 3198, paragraph 149. And so it doesn't really need to be there. In any event, I would conclude with that. If there is any more questions, I'm happy to answer them. Thank you, Your Honors. Okay. Hearing no questions from the panel, the case is submitted. Thank you.